IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GEORGE E. LOVING, JR.<br>and REBECCA LOVING,<br><br>    Plaintiffs,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | 4:07CV3068<br><br><br><br>MEMORANDUM AND ORDER |

  Plaintiffs, George E. Loving and Rebecca Loving ("the Lovings"), bring this action pursuant to 42 U.S.C. § 405(g) requesting judicial review of the Secretary's determination of a workers' compensation offset under 42 U.S.C. § 224(a).  On October 14, 2004, after a hearing, an administrative law judge (ALJ) rendered a decision in which she found that George Loving was due $1,008.10 as the result of an underpayment of his Title II benefits. The ALJ further determined that no underpayment or overpayment was due to Rebecca Loving.  TR 381-86.  On January 4, 2007, after considering additional evidence, TR 628-650, the Appeals Council of the Social Security Administration denied the Lovings' request for review.  TR 371-74. The ALJ's decision became final and subject to federal court review under 42 U.S.C. § 405(g).  Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration under Title II.  Further, section 1631(c)(3) of the Act provides for judicial review to the same extent as the Commissioner's final determination under section 205. 42 U.S.C. § 1383(c)(3).

**FACTS**

On February 21, 1995, George Loving settled a claim for workers' compensation benefits with his former employer. TR 650-57. The settlement was for a total of $16,000.00. TR 653. Paragraph 8 of the "Application for Approval of Final Lump Sum Settlement" provides that the $16,000.00 is comprised of various components: Past due total temporary disability (Element 1) in the amount of $721.63; additional permanent partial disability (Element 2) in the amount of $226.39; additional permanent partial disability (Element 3) in the amount of $11,550.14; and additional compensation (Element 4) in the amount of $3,501.81. TR 653-54.

On October 25, 1995, George Loving protectively filed his applications for disability benefits under Titles II and XVI of the Social Security Act. TR 75-77, 78-81, 381. He alleged that he was disabled, beginning November 15, 1993. TR 75, 78. These applications were denied initially and on reconsideration. TR 85-86, 94-99. On September 9, 1996, after a hearing, an ALJ found that George was not disabled at any time through the date of that decision. TR 17-26. On January 12, 1999, the United States District Court for the District of Nebraska remanded the case to the Administrator for further proceedings under sentence four of section 205(g) of the Social Security Act. TR 394, 430-35. On March 11, 2000, the Appeals Council remanded the case to an ALJ. TR 394, 436-37. On May 18, 2000, after an administrative hearing, the ALJ awarded George disability benefits. TR 394-401. He was found entitled to a period of disability and disability insurance benefits (DIB), as of November 15, 1993,[1] and was eligible for the payment of

---

[1] While his date of disability onset under the Social Security Act was determined to be November 15, 1993, his first month of entitlement to benefits was October 1994, that is, one year before the date he filed his claim on October 25, 1995. TR 545-46.

supplemental security income (SSI), effective October 25, 1995, the protective filing date of his Title XVI application. TR 400-01.

On June 20, 2000, George filed an application for child's insurance benefits on behalf of his daughter, Rebecca, and requested to be selected as payee. TR 381, 711-14. In a Notice of Award dated July 15, 2000, the Agency informed George that Rebecca was entitled to monthly child's benefits beginning October 1994, with the first check in the amount of $9,613.00. TR 715-31. Thereafter, her monthly benefit would be $245.00. TR 717. Rebecca's benefits would be subject to workers' compensation offset. TR 718.

In a Notice of Award dated July 18, 2000, the Agency informed George that he was entitled to monthly disability benefits beginning October 1994. TR 536. The total of the past-due benefits was $23,488.50. TR 554. His benefits for October 1999 through May 2000 were withheld, as it was possible those benefits would be reduced if he received SSI for that period.[2] TR 537. The notice also acknowledged George's receipt of a lump-sum award of $16,000 in settlement of his workers' compensation claim and noted that October 1994 was the first month of his concurrent entitlement to workers' compensation benefits and Social Security benefits. TR 541-42. Legal expenses of $4,000.00 and medical expenses of $1,183.07 were excluded from the lump-sum award before computation of the offset. TR 542. Mr. Loving requested clarification of the calculations used to compute the workers' compensation offset which reduced his and Rebecca's benefits. TR 381, 385.

By notice dated February 13, 2001, the Agency notified Rebecca that overpayment to her in the amount of $10,964.00 had occurred. TR 732-48. Unless the overpayment was refunded within 30 days, full benefits would be withheld until the overpayment had

---

[2] In another Notice of Award, dated July 15, 2000, the Agency informed George that his would be adjusted due to his receipt of SSI and workers' compensation benefits. TR 381, 526-34.

3

been fully recovered. TR 735. Further explanation of this determination was set forth in a letter dated February 19, 2001. TR 749-50. Rebecca requested a waiver of the alleged overpayment. TR 753.

On February 19, 2001, George was notified that he would soon receive a check in the amount of $3,520.00. TR 565. A recalculation of his workers' compensation offset revealed that he was entitled to this money previously withheld from his benefits. TR 566-67. On April 2, 2001, George requested reconsideration of the adverse determination concerning Rebecca's benefits. TR 764-65.

On October 8, 2002, George's September 12, 2000, request for reconsideration was denied. TR 381, 587, 644-49. In a Notice of Planned Action, dated November 19, 2002, George was advised that his SSI payments would stop beginning January 2003 and he might have to repay any money he received before that date that was not due him. TR 685-90. The Agency had determined that he had assets in excess of $3,000.00, which rendered him ineligible to receive SSI. TR 685-86. By notice dated December 17, 2002, George was notified that he would soon receive a check for $852.50 due to a rate increase, retroactive to October 1994. TR 629-31. A second notice, dated December 17, 2002, requested refund, within 30 days, of the overpayment to Rebecca. As compared to the prior notice which requested the repayment of $10,964.00, the SSA now stated that the amount to be repaid was $4,842.00. TR 784.[3]

On December 19, 2002, and again on January 6, 2003, the Lovings filed requests for a hearing regarding the workers' compensation offset and the alleged overpayment determinations. TR 381, 641, 794-95. On February 24, 2004, the United States

---

[3] The Commissioner's brief indicates the overpayment amount was $6,757.00; however, this was the amount payable to Rebecca during the time period, not the amount of the overpayment. TR 784-787.

4

Bankruptcy Court for the District of Nebraska granted George and his wife, Victoria Loving, a discharge under section 727 of Title 11. TR 667-68.

On March 26, 2004, Mary Shandler, RSI Systems Expert for the Social Security Administration, Region VII, submitted data sheets prepared with respect to plaintiffs' claims noting that Proration Method A paid the family $10 more than Methods B or C.[4] TR 679-82. By letter dated March 30, 2004, plaintiffs' attorney forwarded to the ALJ certain additional questions for Ms. Shandler. TR 683-84. The attorney also requested a face-to-face meeting with an agency representative to resolve alleged ambiguities and discrepancies in the record, and that the ALJ postpone the hearing scheduled for April 7, 2004. TR 684. The ALJ did not grant either request. Filing No. 29, Index of Evidentiary Materials in Support of Plaintiffs' Position, p. 49-50.

## ALJ HEARING

On April 7, 2004, a hearing was held regarding the SSA's computation of benefits due to the Lovings. TR 919-61. At the hearing, Ms. Shandler testified regarding the SSA calculations of DIB, but indicated that she was unable to provide any information regarding the SSA's calculation of or payment of SSI benefits. TR. 932, 954, 958. Ms. Shandler testified regarding the three methods to prorate the offset of workers' compensation benefits and which method was best for the Lovings. TR 922. Additionally, Ms. Shandler indicated that she prepared Exhibit B16 which evidenced the application of each of the

---

[4] The SSA has three methods for taking the amount of workers' compensation benefits and determining how to apply the setoff to the Social Security award. Commissioner's Program System Manual (POMS) DI 52001.555, "Prorating Workers' Compensation/Public Disability Benefits Lump Sum." Under Method A, those expenses are applied at the front end and no setoff occurs for those months. *Id.* Under Method B, the total amount is reduced, and the number of weeks of setoff remains the same, so that the monthly amount is lower. *Id.* Under Method C, the expenses are applied at the end of time period. *Id.* The SSA calculates payments under all three methods and applies the method that provides the recipient the most in benefits. *Id.*

5

three methods to the Lovings.  TR 927-29, 680-82.  Ms. Shandler indicated that the different methods for setting off benefits applied only in cases where there were expenses as part of the workers' compensation lump sum payment.  TR 922-23.  Ms. Shandler also testified that which method the SSA uses only makes a difference in certain cases, for example, when the claimant is close to the age of 65, and none of those cases were present for the Lovings.  TR 922-23.  *See also* POMS DI 52001.555.

On the day of the hearing, Ms. Shandler provided an additional payment worksheet that showed what amounts the Lovings were actual paid versus the amount that the SSA owed to them.  TR 702-03, 929, 936, 947.  This worksheet provides that during the period from 1994 through 2003, George was entitled to receive $53,576.76 in DIB payments, less $1,397.70 in Medicare premiums. TR 702.  George was paid $26,241.04 for his DIB during this time, leaving an underpayment of $25,937.76.  TR 702, 930-31, 939.  The SSA then determined that this underpayment was subject to a setoff for an overpayment of SSI in the amount of $18,076.66, attorney's fees in the amount of $4,000.00, and the overpayment of benefits to Rebecca in the amount of $2,853.00.  TR 702, 931-33.  Ms. Shandler testified that the net result was an underpayment of $1,008.10 due to George.

The worksheets provided that during the same time period, 1994 through 2003, Rebecca was entitled to DIB of $7,238.00, but received payments totaling $13,572.00. TR 703.  The parties agreed that the resulting overpayment of $6,336.00 was to be reduced by $3,483.00, which was the amount of the overpayment that was discharged as part of her father's bankruptcy. TR 703, 956.  The result was an alleged overpayment to Rebecca in the amount of $2,853.00 which, as indicated above, the SSA used to offset their underpayment to George.  TR 702, 931-33.

## ALJ DECISION

In her opinion, the ALJ determined that George's DIB was properly computed under Method A, that he was subject to a total underpayment in the amount of $1,008.10, and that there was no underpayment or overpayment pending for Rebecca Loving. TR 393. The ALJ based her findings on Ms. Shandler's testimony and on Exhibits B16, B19 and B20 (TR 679-82, 701-07), adopting the SSA calculations. TR 382, 393, 385. The ALJ made no findings regarding the appropriate amount of the lump sum workers' compensation payment subject to setoff and did not address Rebecca Loving's waiver request.

The parties have presented two issues before the court: (1) whether the Commissioner properly applied offset and proration with respect to George Loving's receipt of a lump sum workers' compensation settlement, and (2) whether substantial evidence supports the Commissioner's computation of the offset.

## STANDARD OF REVIEW

When reviewing a Social Security disability benefits decision, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support a decision." *Cox v. Apfel*, 160 F.3d 1203, 1206-07 (8th Cir. 1998). In determining whether the evidence in the record is substantial, the court

must consider "evidence that detracts from the [Commissioner's] decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).

## LAW AND ANALYSIS

### Proper Offset of Workers' Compensation Lump Sum Award

The Social Security Act provides that periodic payments, such as workers' compensation payments, which exceed certain amounts are offset against disability payments. 42 U.S.C. § 424(a). Certain compensation awards, however, are excluded in 20 C.F.R. § 404.408(d). Federal law limits the amount of Social Security disability insurance benefits that a person may receive when he or she is also receiving state workers' compensation benefits. *Berger v. Apfel*, 200 F.3d 1157, 1159 (8th Cir. 2000). If the sum of a person's Social Security and workers' compensation disability benefits would exceed 80% of that person's pre-disability earnings, 42 U.S.C. § 424a(a) calls for a reduction, or offset, of Social Security benefits such that the total does not exceed the 80% ceiling. *Id.* If such a person receives workers' compensation benefits in the form of a lump sum award, as opposed to periodic payments, the Commissioner must "approximate as nearly as possible" the offset that would have applied had the award been paid periodically. *Id.*, citing § 424a(b). The Act does not specify that the lump sums are to be prorated over a claimant's life expectancy, expected work life, or any other time period; the requirement is that the Commissioner should apply the setoff in such a way as to approximate the reduction that would have occurred had the workers' compensation payments been periodic. *Frost v. Chater*, 952 F. Supp. 659, 662 (1996).

Additionally, the Act's offset provisions only apply to periodic payments, *see* 42 U.S.C. § 424a(a)(2)(A), and exclude lump sum benefits that are not a "commutation of, or a substitute for, periodic payments." 42 U.S.C. § 424a(b). When determining whether a

8

workers' compensation payment is a disability payment covered by § 424a(b), the issue is resolved by looking at federal law, not state law. *Munsinger v. Schweiker,* 709 F.2d 1212, 1217 (8th Cir. 1983). While the state's characterization of a payment as a weekly or monthly benefit or as a nonperiodic benefit is not controlling, this court must consider the state's workers' compensation system in order to determine the issue under federal law. *Frost*, 952 F. Supp. at 663. The burden of proof is on George Loving to show what part of his workers' compensation settlement is not a substitute for periodic payments. *Campbell v. Shalala*, 14 F.3d 424, 427-28 (8th Cir. 1994), *citing Black v. Schweiker*, 670 F.2d 108 (9th Cir.1982).

Element 1 of the Settlement Agreement was payable as past due total temporary disability from February 16, 1993, through March 29, 1993, and November 16, 1993, though June 21, 1994. Because George's DIB benefits did not begin until October 1994, this past due amount does not constitute a double recovery. Therefore, Element 1, in the amount of $721.63, is not part of the lump sum subject to setoff.

Element 2 provided compensation for additional permanent partial disability from June 21, 1994, through December 5, 1994. Element 2 is included in the lump sum subject to setoff only to the extent that it is for benefits after October 25, 1994. Consequently, the court finds, based on calculations provided by George Loving's brief and supported by the record, only $103.95 is part of the lump sum subject to setoff.

Both sides agree that Element 3, in the amount of $11,550.14, is subject to Social Security offset. The Settlement Agreement indicates that this amount was for 238 weeks of benefits, after taking into account that Elements 1 and 2 were payments for the prior 62 weeks. TR 654. The SSA used the 238-week number provided in the Settlement

9

Agreement when calculating the number of months that the lump sum was prorated.  TR 680-82.

The Element 4 was labeled "additional compensation."  George asserts that this amount is not subject to setoff.  At the hearing, George's counsel attempted to argue that this amount was for something other than periodic benefits.  The ALJ refused to consider the argument and indicated that she did not "have jurisdiction to interpret or to do anything on a state court award." TR 916.  However, as indicated above, the determining whether a workers' compensation payment is subject to setoff, is a question of federal law.  Element 4 was specifically excluded from the section of the Settlement Agreement that provided for a lump sum for periodic benefits.  A plain reading of the Settlement Agreement provides that Element 4 is not intended to substitute for periodic payments.  As a result, Element 4, in the amount of $3,501.81, was improperly included in the lump sum setoff calculation by the SSA pursuant to section 424a.

The excludable expenses were determined by the SSA to total $5,183.07, which provides an expense ratio of 32.4% pursuant to the POMS DI 52001.555(I)(2).  Taking both the applicable amounts of Element 2, $103.95, and all of Element 3, $11,550.14, the court determines that the total of the lump sum amount subject to periodic payments is $11,654.09.  This total is subject to a reduction pursuant to the expense ratio of 32.4%, resulting in a total workers' compensation setoff under section 424a of $7,878.16.  The record indicates that the SSA calculated the workers' compensation setoff by reducing the $16,000.00 amount by $4,000.00 in attorney's fees and $1,183.00 in expenses, for a stated setoff amount of $10,817.00.  TR 681.  However, the same document provided by

the SSA indicates that $10,930.60 was actually withheld from the Loving's benefits.[5]  TR 680-82.  Because the SSA relied on the amount actually withheld from the Lovings, $10,930.60, when calculating the overpayment to Rebecca Loving and the underpayment to George Loving, the court will do the same. *See* TR 702-03, numbers in payable columns correspond to the payable amounts listed on TR 680-82.

By deducting $7,878.16, the amount of the lump sum that is subject to setoff, from $10,930.60, the amount used by SSA in determining the amount due to George, the court finds that George Loving is entitled to $3,052.44 in erroneously withheld benefits in addition to the $1,008.10 in benefits as determined by the ALJ.[6]

**Substantial Evidence of Overpayment or Underpayment to the Lovings**

George also argues that substantial evidence does not exist supporting the $18,076.66 offset taken by the SSA for an alleged SSI overpayment.  The Lovings' attorney indicated at the hearing that an SSI payment of $18,076.00 may have been paid in June 2000.  He further stated that, "We've not been able to verify that through Mr. Loving's bank, but I believe the office in North Platte indicated they thought that's when that had been paid."  TR 932.  However, George Loving's 2000 Form SSA-1099, as provided by the Lovings, indicates that in 2000 George Loving received $18,076.00 in "ATTORNEY FEES AND/OR SSI OFFSET."  Filing No. 29, p. 31.  To recover overpayments of disability

---

[5] The record does not indicate why the SSA withheld an additional $113.60 in benefits.

[6] Additionally, George argues that he cannot ascertain whether the correct method for offsetting with expenses was used by the SSA to offset his workers' compensation payments.  The substantial evidence before the ALJ indicates that all three methods resulted in a difference of at most $10, and that the most advantageous method, Method A, was used by the SSA.  The court considered whether its finding that the actual lump sum to be offset is less than the number previously used would change the analysis regarding which method should have been used.  However, the court finds that Method A is still the appropriate method.  First, the reasons contained in POMS DI 52001.555 to use the different methods, for example, that one method provides a better payout for those nearing 65, do not exist in this case.  Second, the Lovings' Index of Evidence, Table 5, evidences that Method A is still the appropriate method.  Filing No. 29, p. 19-20.  The court upholds the ALJ's findings on this issue.

benefits, the Commissioner of Social Security must show that the claimant actually received benefits beyond the period of disability or in excess of the correct amount. *McCarthy v. Apfel*, 221 F.3d 1119 (9th Cir. 2000), *cert. denied* 532 U.S. 923.  The court finds that the SSA did so in this case.  Additionally, the record provides that the Lovings' income limit was too high to receive SSI; thus, SSI was not payable to the Lovings during the relevant time period.  TR 932.  The court, therefore, finds that the ALJ's decision to setoff $18,076.00 in prior SSI payments is substantiated by the record.

### Rebecca Loving is Entitled to a Waiver of Overpayments

The ALJ did not address Rebecca Loving's request for waiver.  Under 42 U.S.C. § 404(b), those who receive overpayments through no fault of their own may be entitled to a waiver of recovery.

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience. In making for purposes of this subsection any determination of whether any individual is without fault, the Commissioner of Social Security shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have (including any lack of facility with the English language).

42 U.S.C. § 404(b).  Under 20 C.F.R. 404.507:

> In determining whether an individual is at fault, the Social Security Administration will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has. What constitutes fault . . . on the part of the overpaid individual or on the part of any other individual from whom the Administration seeks to recover the overpayment depends upon whether the facts show that the incorrect payment to the individual or to a provider of services or other person, or an incorrect payment made under section 1814(e) of the Act, resulted from:
>
> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) Failure to furnish information which he knew or should have known to be material; or

(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. 404.507. The record before the court shows that neither George nor Rebecca Loving was at fault under subparts (a) or (b). The complexity of the calculations, the number of errors admittedly made by the SSA and conflicting notices from the SSA, can only lead to the conclusion that the Lovings could not have known or could have been expected to know that payments made to Rebecca Loving were incorrect.[7]

Next, the court must determine if recoupment would defeat the purpose of this the Act or would be against equity and good conscience. 42 U.S.C. § 404(b). Prior to any cost-of-living adjustment, the family is entitled to a total of a maximum amount of $589 in monthly benefits. TR 680. The only other family income is from Victoria Loving's part-time position where she earns minimum wage. TR 516. The family resides in subsidized housing; however, they are still responsible for utilities. TR 516. Moreover, the Lovings' financial condition was such that they filed Chapter 7 bankruptcy in 2003, which was discharged on February 24, 2004, just two months before the ALJ's hearing regarding the overpayments.[8] TR 667. In fact, the SSA expert testified that when the payments started in 2000, "We knew that he'd been waiting a long time for his checks, and so we wanted to go ahead and get him started as soon as we could." TR 953. The record indicates that recoupment would defeat the purpose of awarding benefits and would be inconsistent with

---

[7] The SSA expert testified that she wasn't able to use SSA computer programs to calculate the amount owed because, "Unfortunately, in Mr. Loving's case it would not do it because of – well, frankly, the harder it gets, the less likely the program is to do it for you." TR 935.

[8] Additionally, the court notes that the alleged overpayment was made to Rebecca Loving, a minor, and the court examined this factor in favor of finding that recoupment is against equity and good conscience.

13

the concepts of equity and good conscience. The court finds that the substantial evidence in this case shows that Rebecca Loving is entitled to a waiver of SSA overpayments made to her that were not discharged in bankruptcy and that the ALJ erred in reducing George's underpayment by $2,853.00.

## CONCLUSION

The court determines that the record overwhelmingly supports the finding that the SSA misapplied George Loving's lump sum workers' compensation award and that Rebecca Loving is entitled to a waiver of her overpayment. Sentence 4 of 42 U.S.C. § 405(g) states that a court has the power to reverse the decision of the Commissioner without remanding. *See, e.g., White v. Heckler,* 774 F.2d 994, 996 (10th Cir.1985). Remanding this case would only delay the receipt of benefits to which the plaintiff is entitled. Accordingly,

IT IS ORDERED:

1. The SSA shall waive its overpayment of $2,853.00 to Rebecca Loving.

2. The SSA shall pay to George Loving, in addition to the $1,008.10 as determined by the ALJ, $3,052.44 for previously underpaid disability benefits as the result of the miscalculation of his workers' compensation setoff and $2,853.00 erroneously deducted by the SSA for overpayments to Rebecca Loving, thus entitling George Loving to total payment of $6,913.54.

DATED this 19th day of March, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge